Greg GREGOIRE, David Urbany, Scott Irwin and Herman Dietsch

v.

CENTENNIAL SCHOOL DISTRICT, and Ronald Y. White, in his official capacity as Supervisor of Secondary Education for the Centennial School District.

Civ. A. No. 87–6679.

United States District Court, E.D. Pennsylvania.

Oct. 28, 1987.

Jordan Lorence, Concerned Women for America, Washington, D.C., Peter Hileman, Doylestown, Pa., for plaintiffs.

John P. Diefenderfer, Newtown, Pa., for defendants.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the court is plaintiffs' Fed.R.Civ.P. 65 motion for a preliminary injunction. Plaintiffs' motion for a prelimi- nary injunction will be granted, and in support thereof the court makes the following findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

The court has federal question jurisdiction under 28 U.S.C. § 1331 by reason of claims alleged to be based on 42 U.S.C. § 1983.

The narrow question before the court is whether, at this stage, under the specific facts of *this* case, plaintiffs are entitled to declaratory injunctive relief under 42 U.S. C. § 1983 against the defendants which would allow the plaintiffs to present on Saturday, October 31, 1987, at the auditorium of the William Tennent High School located in defendants' school district, a Halloween performance by Andre Kole, a magician/illusionist. The performance would include at the end of the 1 hour and 45 minute performance, a 15 minute presentation of an evangelical religious message by Andre Kole on his behalf and on behalf of his sponsor, Student Venture, which is the registered name of Campus Crusade for Christ International, Inc. ("Campus Crusade"), a non-profit organization.

## I. FINDINGS OF FACT

Plaintiffs Greg Gregoire, David Urbany, Scott Irwin and Herman Dietsch [1] filed the above-captioned 42 U.S.C. § 1983 civil rights action seeking declaratory and injunctive relief. Plaintiff Student Venture is an evangelical Christian youth organization that is a subsidiary of or d/b/a Campus Crusade. Defendant Centennial School District (hereinafter "defendant") and defendant Ronald Y. White (hereinafter "defendant White"), in his official capacity as Supervisor of Secondary Education for the Centennial School District located in the Eastern District of Pennsylvania, have denied plaintiff Student Venture's application to rent and use the auditorium of the state-owned William Tennent High School ("the high school") for the evening of Saturday,

---

1. A Complaint was filed on October 20, 1987, by plaintiffs "Greg Gregoire, David Urbany, Scott Irwin and Herman Dietsch." On October 22, 1987, at the preliminary injunction hearing the court granted plaintiffs' oral motion to amend their Complaint to: (1) add Richard Miller and Student Venture as plaintiffs; and, (2) correct plaintiff Gregoire's name to reflect his legal name, Harry Eugene Gregoire.

October 31, 1987, Halloween. Plaintiff Student Venture has completed and filed the necessary application and conformed to all application requirements, including payment of all fees and charges, in order to rent the auditorium for a performance of world-renown illusionist/magician Andre Kole's ("Kole") "World of Illusion" show. Kole often appears as a special traveling representative for Campus Crusade. He performs his show and then, after the show, and following a brief intermission when anyone who chooses to leave may do so, he delivers his Christian evangelical message to those members of the audience who wish to remain to hear it.

On August 27, 1987, plaintiff Gregoire, the Director of plaintiff Student Venture for the Delaware Valley area (which includes the area covered by defendant), submitted to an employee of the high school defendant's form of "Application for Use of School Facilities" ("application") that his subordinate, plaintiff Richard Miller, had filled in and signed on June 8, 1987, together with plaintiff Student Venture's check in the amount of $1,379.63 which had been signed by plaintiff Gregoire and another individual. The application and the deposit check were for the rental of the high school auditorium for the performance in question.

On September 3, 1987, the principal of the high school, Kenneth D. Kastle, wrote plaintiff Miller: (1) informing him that the application and check were received; (2) inquiring about the religious content of Kole's program; and, (3) stating that any religious content would violate defendant's policy 6.2.B. paragraph 17. Policy 6.2.B. provides in pertinent part:

> 17. Pennsylvania law specifically prohibits the use of school facilities for religious services, instruction and/or activities.

Principal Kastle's September 3rd letter also contained, *inter alia,* the following request: "I must ask you to insure that no religious content will be included in the Andre Kole program." On September 4, 1987, plaintiff Gregoire submitted to an employee of the high school a copy of a certificate of insurance from Fireman's Fund Insurance Company for a $2 million liability policy for the proposed October 31, 1987 (Halloween) Kole performance at the high school. The certificate listed Campus Crusade as the insured and named William Pennent [sic] High School c/o Greg Gregoire/Student Ventur [sic] as additional insured. Gregoire testified *he* received Principal Kastle's letter dated September 3, 1987 on September 8, 1987. On September 11, 1987, defendant White wrote plaintiff Gregoire to officially deny plaintiff Student Venture's high school auditorium use application and return the deposit check. In the September 11th letter defendant White stated, *inter alia:*

> I called you on Wednesday, September 9th, to discuss with you exactly what the program involved. You indicated that after the performance by Andre Kole, he would speak approximately 15 minutes sharing with the audience his "personal view with God." Such a performance would be in violation of our procedures regarding facility use, specifically prohibiting the use of school facilities for religious services, instruction, and/or activities.

Plaintiffs have asserted the following four causes of action in their Complaint, all of which they contend violate 42 U.S.C. § 1983: (1) violation of the Free Speech and Assembly Clause of the First Amendment; (2) violation of the Equal Protection Clause of the Fourteenth Amendment; (3) violation of the Free Exercise Clause of the First Amendment; and, (4) violation of the Establishment Clause of the First Amendment.

The basis of plaintiffs' first cause of action is that since defendant has created an "open forum" at the public school buildings in its district, its policy 6.2.B., and refusal to rent the high school auditorium to plaintiff Student Venture is speech content-based discrimination in violation of plaintiffs' free speech and assembly rights as guaranteed by the First and Fourteenth Amendments. Plaintiffs contend that defendant has created an "open forum" for free speech and assembly at its school facil-

ities by renting them out to a wide assortment of groups from the community.[2] Since 1982, defendant has rented the very auditorium at issue in this action to various community groups.[3]

Plaintiffs' contention in their second cause of action is that defendant's policy of renting its facilities to non-religious groups, but refusing to rent facilities to religious groups, violates the Equal Protection Clause of the Fourteenth Amendment. Plaintiffs argue that the court should apply a strict scrutiny analysis since defendant bases its exclusion on a suspect classification (religion) and infringes on fundamental rights (freedom of speech, assembly and free exercise of religion).

Plaintiffs allege in their third cause of action that their religious beliefs, which include evangelizing people to convert them to believe in Jesus Christ as Lord and Savior, are burdened by defendant's refusal to rent them the high school auditorium for the evening and function at issue. Plaintiffs claim that this refusal by defendant to accommodate plaintiffs' religious beliefs violates plaintiffs' rights to free exercise of religion as guaranteed under the First and Fourteenth Amendments.

The basis of plaintiffs' fourth and last asserted cause of action is that notwithstanding its policy prohibiting use of school facilities for religious instruction, defendant has allowed Adult Education evening classes "which teach on such occultic religious subjects as reincarnation, karma, astrology, yoga, out-of-body experiences, past life regressions, psychic healing, auras, palmistry, channeling and trance-mediumship" to be held at the high school. Plaintiffs' Complaint at 9; see also Exhibit 8 to plaintiffs' Complaint which was received in evidence as Exhibit P-6 at the preliminary injunction hearing. Consequently, plain-

tiffs argue, defendant has violated the Establishment Clause of the First Amendment and 42 U.S.C. § 1983 by enforcing a school district policy prohibiting religious instruction in the public schools against plaintiff Student Venture, and then allowing adult education classes at the high school that instruct people in occultic religious practices and Hinduism, such as reincarnation, astrology, yoga, tarot cards and numerology, and similar spiritual development programs.

Defendant argues that the school facilities do not constitute an open public forum and, therefore, they have the power to exclude all religious speech. In support of this position defendant notes that a secondary school is not a forum for public expression like streets, sidewalks and parks. Defendant argues that the purpose of public schools is education and thus by implication, any forum created in public school facilities must be limited accordingly. Defendant states that "[t]he Pennsylvania Constitution expressly forbids the use of tax dollars, which are forced contributions for the purpose of government, to be used to support any religious activity." Defendant's Memorandum at 3. Defendant argues that plaintiffs cannot show (1) that a policy excluding religious activity in public school buildings has no legitimate secular purpose in view of the state of the law; (2) that such a policy either advances or inhibits religion; or (3) that such a policy entangles Church and State. The court agrees with defendant as to (1), but disagrees as to (2) and (3).

## II. DISCUSSION AND CONCLUSIONS OF LAW

■ A party seeking a preliminary injunction bears the burden of producing evidence sufficient to convince the court that

2. The following is a partial list of the groups: Boy Scouts, Weebelos, Cub Scouts, Girl Scouts, Brownies, Easter Seal Society, Kiwanis, Kiwanis Christmas Tournament, Rotary Club, Northeast Dance Studio, Steinbrecher Dance Studio, Industrial Union of Rotometer Workers, Warminster Symphony, Warminster Amatuer Radio Club, Our Lady of Good Counsel, Nativity of Our Lord, Nativity CYO, Northeast Photo, Centennial Adult Education, Armed Service Voca-

tional Aptitude Test, Navy Power Squadron, Bucks County Community College, Bucks County Board of Elections. See Exhibit P-5 (Centennial School District facility use reports for the years 1983 to 1987).

3. Rita Rue Dance Studio, Warminster Youth Football and the Bloodmobile.

(1) the movant has shown a reasonable probability of success on the merits; (2) the movant will be irreparably injured by denial of relief; (3) granting preliminary relief will not result in even greater harm to the other party; and, (4) granting preliminary relief will be in the public interest. *ECRI v. McGraw-Hill, Inc.,* 809 F.2d 223, 226 (3d Cir.1987) (*citing SI Handling Systems, Inc. v. Heisley,* 753 F.2d 1244, 1254 (3d Cir.1985)).

The following characterization of a recent case applies to the case *sub judice:*

> The case implicates a constitutional conflict of the highest order. The plaintiffs assert a constitutional right as the basis of their claim. The defendants assert a constitutional limitation as the basis of their defense.

*Bender v. Williamsport Area School Dist.,* 563 F.Supp. 697 (M.D.Pa.1983), *rev'd,* 741 F.2d 538 (3d Cir.1984), *cert. granted,* 469 U.S. 1206, 105 S.Ct. 1167, 84 L.Ed.2d 319, *vacated and remanded with instruction to dismiss for want of jurisdiction,* 475 U.S. 534, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986). Plaintiffs argue that the First Amendment requires the defendant to allow them the use they seek while defendant argues that the First Amendment bars it from allowing such use.

In order to rule out the application of certain legal principles and authorities, it is important to note at the outset that the activity here in question is not requested for use on the school premises during normal school hours at which members of the school student body would be the exclusive attendees or the principal attendees and at which teachers or other academic professionals would be present in some role. Rather, the activity is requested to take place on a weekend, after school hours, and the members of the public in the community of the school are those who are targeted for invitation, although many of these could very likely be, and indeed are presumably expected by the plaintiffs to be, students of the school system or persons of that age. No school personnel are expected to be present other than custodial employees. Those who attend would do so voluntarily. The plaintiffs have made application for this use as a result of the policy of this school district to allow groups in the community to apply for use of the school facilities after school hours for a broad spectrum of community activities, by all members of the community.

## A. *Plaintiffs' Free Speech Rights*

The principal right that the plaintiffs seek to protect here is the right of free speech and association guaranteed by the First Amendment of the Constitution.[4] Indeed, the plaintiffs must make a showing that their free speech will be violated; otherwise, the intrusion of the courts is improper into the management of school property. *See Eperson v. Arkansas,* 393 U.S. 97, 104–105, 89 S.Ct. 266, 270–71, 21 L.Ed. 2d 228 (1968). With this as our focus, do the plaintiffs have a free speech right guaranteed by the First Amendment? To answer this question, the court must determine whether defendant has created a forum, and if so, what type, *i.e.,* was it "public" or "limited," and if "limited," in what manner?

The state is not required to open its property to the public in order to allow it to engage in free speech, association, and discussion—but once it does, rights of free speech and association guaranteed by the First Amendment are entitled to be protected even if that activity includes religion or religious subjects. *See Widmar v. Vincent,* 454 U.S. 263, 269, 102 S.Ct. 269, 274, 70 L.Ed.2d 440 (1981). That is, the First Amendment does not give any individual or group the right to use public facilities as a speech forum unless those facilities have already been opened as such a forum by having already been made accessible to similar individuals or groups. *See Perry Educational Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). Government facilities that traditionally provide a location for free assembly, association, and communication

---

**4.** Since plaintiffs' first asserted cause of action, their free speech rights claim, is dispositive of the instant motion, the court need not address any of plaintiffs' remaining claims.

by citizens, such as streets, parks, and sidewalks, are deemed the public forum entitled to the broadest protection of the First Amendment rights of free speech and association. When the facilities, however, are limited by the government in respect to the use because of genuine special concerns and public obligations, the locale, though open as a forum, is deemed to be a limited one. The special circumstances that the state deems important in respect to such a facility and which make it a limited forum, may also place limits on the rights of free speech and association at such a facility, but only to the extent that limitations on these protected rights are constitutionally permissible. The state may create a "limited forum" for particular groups (*i.e.*, students) or specific activities, but it may not exclude expression within the limits it has established, nor may it exclude a group which is otherwise entitled to use the facility in accordance with the standards set. *Bender, supra,* 741 F.2d at 547.

■ Here, defendant has opened the school facilities for general use by community groups that have the widest definitional range in its stated policy and, indeed, by concluding the list of eligible groups in their priority of use sequence by using the term "others," it can be presumed that there is virtually no limit on the groups that could apply for use of the buildings, subject, of course, to standards having to do with the protection and the security of persons, property, and the preservation of public resources committed to the school district. The school facilities here, subject only to the limitations of hours, administrative requirements of filing an application and paying the fees and costs, and conforming to the general standards regarding use that would not cause injury or damage to persons or property, though definitionally "limited," are for all intents and purposes a public forum from the vantage point of the protection of First Amendment rights of free speech and association. Unlike *Widmar* and *Bender,* the forum created by the defendant in the instant action *is open* to the general public and not limited to just student use.

Under these circumstances, defendant, in discriminating and excluding uses by persons and groups, assumes the burden of justifying its refusal to the plaintiffs in accordance with applicable constitutional standards. It is no defense that the facility was not required to be open in the first place because the Constitution forbids a state to enforce unconstitutional exclusions from a forum generally open to the public, even though the forum was not required to be open in the first place. *See Widmar, supra,* 454 U.S. at 267–68, 102 S.Ct. at 273–74. The defendant has excluded the plaintiffs from this forum solely because a portion of the speech in the program to be presented will have religious content. Because this is a forum for community speech and association protected by the First Amendment, in order to justify discriminatory exclusion based on religious content of plaintiffs' presentation, the defendant must satisfy the standard of review appropriate to content-based exclusions. That is, the defendant must show that their regulation 6.2.B. paragraph 17, as applied here, is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. *Id.* at 269–70, 102 S.Ct. at 274–75. The defendant's position before the court is that *the* compelling state interest in this case is the fear that by allowing the plaintiffs to make the presentation as described, defendant would be violating the Establishment Clause of the First Amendment as applied to the States and this defendant by the Fourteenth Amendment that, *inter alia,* prohibits the state from making any law "respecting an establishment of religion, or prohibiting the free exercise thereof; ..." U.S. Const. amend. I.

### B. *Defendant's Establishment Clause Defense*

■ In addressing defendant's defense and concerns that it would be violating the Establishment Clause if it permitted plaintiffs to use the forum in the manner proposed, the court follows, to the extent applicable, the analysis outlined by the United States Court of Appeals for the Third Circuit in *Bender, supra,* 741 F.2d at 544.

That opinion was ordered vacated by the United States Supreme Court because the appellant lacked standing; however, the reasoning is persuasive in pertinent aspects even though the holding is not binding precedent. If, as the court has concluded, defendant did create an open public speaking forum, may defendant validly rely on its policy and deny plaintiffs the use they seek for the purpose they seek, based upon its perception of a violation of the Establishment Clause? The answer to this question depends on an analysis of the three *Lemon v. Kurtzman* tests: (1) would permitting the activity have a secular purpose; (2) would permitting the activity have the primary effect of *neither* advancing *nor* inhibiting religion; and, (3) would permitting the activity *avoid* excessive government entanglement with religion? *See Lemon v. Kurtzman*, 403 U.S. 602, 612–613, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971); *see also Lynch v. Donnelly*, 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984). If the answer to all three of the above *Lemon* inquiries, as the court has stated them, is "yes," then no Establishment Clause violation will occur if defendant allows plaintiffs the use they seek. If that is the case, then defendant has erred in denying plaintiffs' use application for the reason they rely upon.

The crucial inquiry then is whether defendant would be violating the Establishment Clause by allowing plaintiffs to use the auditorium in the proposed manner.

Rather than mechanically invalidating all governmental conduct or statutes that confer benefits or give special recognition to religion in general or to one faith —as an absolutist approach would dictate—the Court has scrutinized challenged legislation or official conduct to determine whether, in reality, it establishes a religion or religious faith, or tends to do so.

*Lynch v. Donnelly, supra,* 104 S.Ct. at 1361–62.

In the instant case the court concludes that defendant has, albeit with good intentions and possibly because it perceives its role to be an adversarial one in separating church and state, pushed too hard against the sometimes wavering wall of separation that must be held up between church and state. "The Establishment Clause mandates state neutrality, not hostility toward religion." *Bender, supra,* 106 S.Ct. at 1338 (Burger, J., dissenting). Nothing in the Establishment Clause requires the State to suppress a person's speech merely because the content of that speech is religious in character. *Id.* at 1337.

Defendant *would* have a secular purpose for allowing plaintiffs the use they seek. Permitting plaintiffs the use they seek would not have as its primary effect either the advancement or inhibition of religion. The open speech forum at the school facilities during non-school days involving events that are not school employee initiated or led or primarily student attended does not confer any state endorsement or sponsorship of religious sects or practices. Any benefit a particular religious group, speaker, or religion may derive from defendant's open speech forum policy is merely incidental and not the forum's "primary effect." "A religious organization's enjoyment of merely 'incidental' benefits does not violate the prohibition against the 'primary advancement' of religion." *Widmar, supra,* 454 U.S. at 263, 102 S.Ct. at 271 (*citing Committee for Public Educ. v. Nyquist,* 413 U.S. 756, 771, 93 S.Ct. 2955, 2965, 37 L.Ed.2d 948 (1973)). Additionally, in the absence of any evidence that religious speakers will dominate defendant's open speech forum, it cannot be said that advancement of religion would be the forum's "primary effect."

 The court has decided the motion now before it without addressing, as the centerpiece, the defendant's written policy [5]

---

**5.** The affidavit which defendant's counsel submitted at the preliminary injunction hearing makes reference to a proposed change in defendant Centennial School District's policy. *See* "Affidavit Contrary to Application for Prelimi-

nary Injunction" at paragraph number 3 which appears on page 3. Plaintiffs' counsel argued that this proposed change which defendant is now considering would be more restrictive than defendant's present policy. The within ruling

("regulation"), 6.2.B. paragraph 17, since it is what the defendant does, rather than what its regulation says that is ultimately decisive. Since, however, defendant has pointed to this written regulation as a basis for its conduct, the court will address it. As the regulation is placed over the constitutional spectrum it takes on a somewhat chameleonic character giving it different constitutional hues. The manner that defendant invokes this written regulation will determine the constitutional hues it will project—sometimes constitutionally acceptable; sometimes not. The portion of the regulation which prohibits use of school facilities for any religious "services" has potential constitutional vitality at another time, and in another case, since the forum defendant has created is only an open forum as to *speech* and association and not services, rituals, ceremonies or rites. Furthermore, the performance of religious services by definition does not have a secular purpose and would thus violate the Establishment Clause. On the other hand, the portion of the regulation which prohibits use of school facilities for religious "instruction" is not valid in the context of this case since it violates plaintiffs' free speech rights. The portion of the regulation which prohibits religious "activities" has no constitutional meaning when read in a vacuum without any specific application to precise facts. To the extent that the regulation would be exclusively relied upon to bar religious *speech*, it is unconstitutional.

The court concludes, as the Court did in *Widmar*, that:

> ... the state interest asserted here—in achieving greater separation of church and state than is already ensured under the Establishment Clause of the Federal Constitution—is limited by the Free Exercise Clause and in this case by the Free Speech Clause as well. In this constitutional context we are unable to recognize the state's interest as sufficiently "compelling" to justify content-based discrimination against [plaintiffs'] religious speech.

speaks only to the existing policy and not the proposed policy, leaving that issue to a later day

*Widmar, supra,* 454 U.S. at 276, 102 S.Ct. at 278.

Plaintiffs have met their burden of producing evidence sufficient to convince the court: (1) that there exists a reasonable and strong probability that they will ultimately succeed on the merits; (2) that they will be irreparably injured if the requested relief is not granted since their free speech rights will be infringed; (3) that granting plaintiffs the preliminary relief they seek will not result in even greater harm to defendant; and, (4) that granting preliminary relief is in the public interest since the members of the community will be able to exercise their free speech rights.

In sum, defendant is violating plaintiffs' free speech rights and *not* the Establishment Clause by enforcing its limited forum policy to exclude plaintiffs from using the forum solely because of the religious content of the speech in plaintiffs' proposed event. Accordingly, the court will grant plaintiffs the injunctive relief they seek at this juncture in the action.

An appropriate Order will be entered.

## ORDER

AND NOW, TO WIT, this 28th day of October, 1987, in accordance with the accompanying Memorandum which contains the court's Fed.R.Civ.P. 52(a) findings of fact and conclusions of law, IT IS ORDERED as follows:

1. Defendant Centennial School District is hereby *enjoined* from barring Andre Kole's performance at the William Tennent High School auditorium on the evening of October 31, 1987, solely due to the religious speech content of that performance;

2. As long as it maintains the speech forum it has created as the court has defined open speech forum in the accompanying Memorandum, defendant is hereby *enjoined* from refusing to rent public school facilities within Centennial School District if necessary.

to groups or individuals solely because of the religious content of their speech;

3. Defendant is hereby *enjoined* from closing the open speech forum it has created before it allows plaintiffs the rental use on October 31, 1987, for which they are eligible; and

4. Plaintiffs' motion for a preliminary injunction is hereby *granted* to the extent indicated above.