Harry GREGOIRE, David Urbany, Scott Irwin, Herman Dietsch, Rich Miller and Campus Crusade for Christ, Inc.

v.

CENTENNIAL SCHOOL DISTRICT, and Ronald Y. White, in his official capacity as Supervisor of Secondary Education for the Centennial School District.

Civ. A. No. 87–6679.

United States District Court,
E.D. Pennsylvania.

Nov. 30, 1988.

Peter Hileman, Doylestown, Pa., Jordan Lorence, Washington, D.C., for plaintiffs.

John P. Diefenderfer, Newtown, Pa., for defendants.

---

**104**

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the court is plaintiffs' "Motion For Summary Judgment: Permanent Injunction And Declaratory Relief" whereby plaintiffs seek: (1) a declaration from this court that defendant Centennial School District's ("Centennial") policy on facility use, as amended on March 8, 1988 (hereinafter "the new policy"), violates the United States Constitution's Free Speech Clause of the First Amendment and Equal Protection Clause of the Fourteenth Amendment; and (2) a ruling that defendants are permanently enjoined as follows: "As long as the defendants allow nonschool groups to use or rent Centennial School District facilities, defendants are enjoined from refusing to allow groups or individuals to use those facilities solely because of the religious content of their activities."

## I. BACKGROUND

A detailed background of this action appears in the court's October 28, 1987 Memorandum and Order, reported at 674 F.Supp. 172,[1] wherein the court granted plaintiffs' Fed.R.Civ.P. 65 motion for a preliminary injunction and made detailed Fed.R.Civ.P. 52(a) findings of fact and conclusions of law which the court incorporates herein by reference.

The new policy was apparently still in its conceptual and developmental stages at the time of the preliminary injunction hearing in this action. For that reason, the court, in its October 28, 1987 Memorandum and Order, did not consider any of the then "proposed" amendments to the then existing policy, but instead left that issue to a later day, which has now arrived. *Gregoire, supra,* 674 F.Supp. at 178–79, n. 5.[2]

In accordance with the court's October 28, 1987 Memorandum and Order, plaintiffs rented and used William Tennent High School auditorium on the evening of Satur-day, October 31, 1987 (Halloween) to host illusionist/magician Andre Kole's "World of Illusion" performance.

Plaintiffs now claim that in the future they may desire to use Centennial's school facilities again if they are open for public use outside of school hours. They argue that the new policy is unconstitutional on its face, as a violation of their rights to freedom of speech, equal protection under the law, and free exercise of religion. Plaintiffs seek declaratory relief that the new current policy is unconstitutional and a permanent injunction barring its implementation by Centennial.

In its October 28, 1987 opinion the court noted that it had decided and granted plaintiffs' motion for a preliminary injunction "without addressing, as the centerpiece, the defendant's written policy ('regulation'), 6.2.B., paragraph 17, since it is what defendant does, rather than what its regulation says, that is ultimately decisive." *Id.* at 178–79. However, the court went on to address the written regulation since defendants had pointed to it as a basis for their position. The court noted:

> As the regulation is placed over the constitutional spectrum it takes on a somewhat chameleonic character giving it different constitutional hues. The manner that defendant invokes this written regulation will determine the constitutional hues it will project—sometimes constitutionally acceptable; sometimes not. The portion of the regulation which prohibits use of school facilities for any religious "services" has potential constitutional vitality at another time, and in another case, since the forum defendant has created is only an open forum as to *speech* and association and not services, rituals, ceremonies or rites. Furthermore, the performance of religious services by definition does not have a secular purpose and would thus violate the Establishment Clause. On the other hand, the portion

**1.** Affirmed without opinion, *Appeal of Centennial Sch. Dist.,* 853 F.2d 917 (3d Cir.1988) and *Gregoire v. Centennial Sch. Dist.,* 853 F.2d 918 (3d Cir.1988).

**2.** The *then* existing policy, Policy 6.2.B., paragraph 17, read as follows:
 Pennsylvania law specifically prohibits the use of school facilities for religious services, instruction and/or activities.

of the regulation which prohibits use of school facilities for religious "instruction" is not valid in the context of this case since it violates plaintiffs' free speech rights. The portion of the regulation which prohibits religious "activities" has no constitutional meaning when read in a vacuum without any specific application to precise facts. To the extent that the regulation would be exclusively relied upon to bar religious *speech*, it is unconstitutional.

*Id.* at 179. (Emphasis in original).

On March 8, 1988, Centennial changed its Facilities Use policy. That new policy states, in pertinent part:

c. In any event, religious services (defined to include the invocation of, worship to, prayer to, or adoration of a diety [sic]) is prohibited.

d. The sale or distribution of Bibles, testaments, scriptures or religious literature is prohibited.

New Policy at p. 6.2.F.

Defendants oppose plaintiffs' "Motion For Summary Judgment: Permanent Injunction And Declaratory Relief" and argue that the enactment of the new policy moots this case and thus there is no longer a case or controversy. Defendants note that the only remaining part of the court's October 28, 1987 Order which requires persuasion of mootness is paragraph No. 2 of that Order which provides as follows:

2. As long as it maintains the speech forum it has created as the court has defined open speech forum in the accompanying Memorandum, defendant is hereby *enjoined* from refusing to rent public school facilities within Centennial School District to groups or individuals solely because of the religious content of their speech;

*Gregoire, supra,* 674 F.Supp. at 179–80. (Emphasis in original). Defendants argue that:

[T]he specific speech forums (open to the general public) mentioned in the Court's Order and Memorandum ceased to exist on March 8, 1988 when the former *Facility Use Policy* 6.2 was replaced by the new *Facility Use Policy*, by the act of

the School Directors on the advice of counsel and the administrators upon review of this Court's opinion. The new "forum" differs from the old in several critical ways:

1. It is no longer a forum open to the "general public." (See page 11 of the Court's *Memorandum* dated October 28, 1987.) Instead, it is better drafted to limit the forum to specific designated "groups" and "activities." (See page 10 of the *Memorandum*.)

2. Regulation Rule B.17 prohibiting use for "religious services, instruction and/or activities" is removed in the new policy.

3. The new policy, in addition, creates an "open forum for the free expression of ideas" within the evening school: Section I.B. (at page 6.2.B.).

4. The "limited open student forum" is continued as heretofore.

Defendants' Amended Memorandum On Mootness at p. 2.

## II. DISCUSSION

 The court finds that given the history of this proceeding, plaintiffs have standing to challenge the constitutionality of the new policy. *See Broderick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *New York State Club Assoc., Inc. v. City of New York, et al.,* —— U.S. ——, 108 S.Ct. 2225, 101 L.Ed.2d 1 (1988). In *New York State Club Assoc., Inc., supra,* the Court noted that facial challenges to the constitutionality of a statute, when speech protected by the First Amendment is at stake, will prevail if the plaintiff can demonstrate that the challenged law falls within one of the following two exceptions to ordinary standing requirements: (1) when the law "could never be applied in a valid manner;" or (2) when even though the law may be validly applied to the plaintiff and others, it nevertheless is so broad that it "may inhibit the constitutionally protected speech of third parties." (citing *City Council v. Taxpayers for Vincent,* 466 U.S. 789, 798, 104 S.Ct. 2118, 2125, 80 L.Ed.2d 772 (1984)). The Court went on to

explain that both exceptions are narrow ones:

> "the first kind of facial challenge will not succeed unless the court finds that 'every application of the statute created an impermissible risk of suppression ideas,' *Taxpayers for Vincent, supra,* 466 U.S., at 798, n. 15, 104 S.Ct., at 2125, n. 15, and the second kind of facial challenge will not succeed unless the statute is 'substantially' overbroad, which requires the court to find 'a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court.' 466 U.S., at 801, 104 S.Ct. at 2126."

The first exception does not apply to the policy plaintiffs seek to challenge since not *every* application of the new policy creates an impermissible risk of suppression of ideas. The court is more inclined to find that the new policy comes within the second exception because it is substantially overbroad. That is, there is a realistic danger that the policy itself will significantly compromise recognized First Amendment protections of parties not before the court.

■ The court also finds that the issue is not moot. *See DeFunis v. Odegaard,* 416 U.S. 312, 318, 94 S.Ct. 1704, 1706, 40 L.Ed. 2d 164 (1974) (cessation of practices complained of could make case moot only if it could be said with assurance that there is no reasonable expectation that wrong will be repeated); *see also City of Lakewood, Ohio v. Plainview Dealership,* —— U.S. ——, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988).

Although Centennial claims in its papers before this court that its "new forum" is no longer a forum open to the general public, a reading of the new policy demonstrates that Centennial has, despite its declared intention, adopted as its new policy another open public forum, as that term has meaning in the constitutional sense.

Centennial continues to allow outside non-school related groups to utilize its facilities. The new policy itself states: "[t]he Centennial School Board encourages the use of facilities by school-related organizations, and Centennial community and youth groups." The policy allows the following non-school system groups to use Centennial's facilities without charge:

Centennial resident youth groups:
—organized sports
—scouting organizations
—Indian Guides/Princesses
—organized cheerleaders
Centennial resident civic, cultural and service organizations:
—Centennial neighborhood groups
—Centennial music, drama or artistic groups
—Rotary Club
—Kiwanis
—Lions
—Junior Chamber of Commerce (Jaycees)
—adult resident recreation groups

*See* New Policy at pp. 6.2.A. and 6.2.B.

Centennial allows various other outside groups to rent its facilities:
—labor unions (community-based)
—employee associations (community-based)
—commercial, profit-making ventures (plays/concerts)
—colleges and universities (courses)

*See* New Policy at p. 6.2.B.

■ The court notes that Centennial has changed the wording of its old policy in adopting its new policy. Simply because Centennial changed the written words of its policy, however, does not mean that it can now sponsor even a re-worked and re-worded policy if it carries with it similar constitutional infirmities that burdened the old policy. In other words, nothing before the court (except for some of the verbage of the new written policy itself) shows that Centennial has actually altered previous constitutionally unsound practices. Thus, if Centennial's facility use practices have not changed, it still maintains in practice an open public forum even though its written policy has changed. If it still allows all, or almost all, of the same or similar groups and organizations to use its facilities, then it likewise continues to maintain an open public forum for speech. This court held

before, and it must hold again, that Centennial cannot continue to allow the designated groups and organizations to use its facilities, but exclude any applicant, such as plaintiffs, who seek to use the facilities to speak about religion, because that would once again be content-based discrimination against speech in an open forum.

As the court noted in its earlier opinion in this action, it is the manner that defendant practices its written regulation that will determine the constitutionality of its program. For example, Centennial's new policy prohibits "religious services" which it defines to include "the invocation of, worship to, prayer to, or adoration of a diety." Apparently, based upon this definition of religious services, plaintiffs presume and, perhaps rightfully so, that defendants can and very likely will, given the opportunity, apply this new written policy to deny any future auditorium rental application by plaintiffs for another appearance by Andre Kole since, following his illusion/magic performance, Kole delivers his Christian evangelical message to those members of the audience who wish to remain to hear it. Plaintiffs contend that since the new policy explicitly creates an "open forum for the free expression of ideas" within the evening school, *see* Policy at Section I.B. at p. 6.2.B., consequently Kole's message would be protected and First Amendment speech would be entitled to be spoken in the open public forum. Plaintiffs are correct. Centennial's apparent attempt to close and/or limit its open public speech forum within the courses of the evening school is constitutionally unacceptable. It is either an open public forum or it is not an open public forum. It cannot be an open public forum for just those who participate in the evening school but a closed forum to all those who do not.

Although the way in which defendants will apply this new policy remains to be seen, it is apparent from their memoranda on this issue that defendants seem to have misunderstood the present state of the law as to "public forum created by government designation" and the prohibition against placing content-based restrictions on those who seek to use an open forum, absent a compelling state interest to do so in the least restrictive way.

■ If Kole's delivery of his Christian evangelical message is an explanation of his religious belief, or his religious experience, then that is a precise example of free expression of ideas that Centennial cannot prohibit, given the broad program of speech and expression offered to the community in its forum. If, on the other hand, Kole's Christian evangelical performance was some sort of a religious ceremony, rite or ritual, then defendants would be permitted, under constitutional standards, to deny a facility use application since the forum created by Centennial is an open one only for *speech* purposes. Centennial cannot deny an application by plaintiffs, or someone else, to rent the auditorium for a performance similar to the one previously given by Kole on the ground that the new policy, as it is now worded, does not permit defendants to rent to groups such as the plaintiffs, or that the new policy does not allow someone, otherwise eligible to use the facilities, to include in that use a discussion or declaration of a religious topic.

Since Centennial has created and maintained an open public forum as to speech, plaintiffs have free speech rights guaranteed by the First Amendment that are entitled to be protected.

## III. CONCLUSION

Accordingly, plaintiffs' motion for a permanent injunction will be granted to the extent that: so long as the defendants maintain an open speech forum they are permanently enjoined from refusing to allow groups or individuals to use those facilities solely because of the religious content of their speech, absent some compelling state interest.

An appropriate Order will be entered.